UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHARONE HUBERT, | ) | 3:23-CV-00563 (SVN) |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STATE OF CONNECTICUT | ) | |
| DEPARTMENT OF CORRECTION, | ) | |
| *Defendant* | ) | July 17, 2024 |

## RULING AND ORDER ON MOTION TO DISMISS

Sarala V. Nagala, United State District Judge.

*Pro se* Plaintiff Sharone Hubert has sued her former employer the Connecticut Department of Correction ("DOC"), for what she claims is retaliation on the basis of her race, color, religion, and sex. The complaint contains disturbing allegations concerning the wrongful death of an individual named Reverend Walter Simmons and multiple attempted murders, sexual and physical assault, and illegal surveillance. Plaintiff brings claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, and a number of Connecticut state statutes and common law. She is seeking reinstatement to her former position and an unspecified amount of monetary damages.

Defendant has moved to dismiss the entire complaint. For the reasons described below, the Court agrees with Defendant that most of Plaintiff's federal claims are barred under the Eleventh Amendment and that Plaintiff's Title VII retaliation claim is not plausibly pleaded. As a result, no federal claims remain in the suit. The Court declines to exercise supplemental jurisdiction over any state law claims. The motion to dismiss is thus GRANTED, and the complaint is DISMISSED, without leave to amend for the reasons expressed below.

I.       FACTUAL BACKGROUND

Plaintiff is an African American woman who was employed by DOC from February 13, 1998, until May of 2021. Compl., ECF No. 1 at 3, *id.* at 12 ¶ 1. Plaintiff claims that she has been the victim of harassment and criminal conduct by DOC for years, including "covert harassment attempted murder, [f]rustrated [m]urder, [d]igital [r]ape, illegal retaliatory acts, modern-day slavery, human trafficking victim, pornography, sex slave, slave, force solitude, digital rape/ forcible sexual penetration with a foreign object, illegal recording, [and t]ampering with evidence." *Id.* at 12 ¶ 3. She alleges that the unlawful conduct included her being "battered, her skin burned, her hair cut off, sodomized, her teeth knocked out, caps knocked off the tooth, bridge knocked off, face altered, brain cloned, digital rape, electronic rape, appearance changed, experimented on, eye retina hacked, cloned, stalked, 24-hour surveillance, placed in gas units, massive pressure to the plaintiff's head while on duty, off duty, vehicles totaled, dreams recorded and sold." *Id.* at 12 ¶ 4. Plaintiff further claims that "Defendants" placed an eyeball on her face and in her vagina, and inserted a "transparent device with a soul" into her body to control her anus. *Id.* at 12 ¶ 5.

In March of 2022, Plaintiff's stepfather, Rev. Walter Simmons, passed away at the age of 94. *Id.* at 10. Plaintiff appears to allege that Defendant caused her stepfather's death by placing an eyeball that emitted strong ultraviolet light into his room, allegedly to retaliate against her for her past discrimination charges and lawsuits. *Id.*

On December 11, 2022, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), citing her stepfather's death as the most recent discriminatory action by DOC. *Id.* at 55. The EEOC dismissed the charge on January 30, 2023, finding that Ms. Hubert was not in an employment relationship with DOC (presumably because,

as Plaintiff alleges, she was terminated from this employment in May of 2021, approximately nine months before her stepfather's death). *Id.* at 7, 25.

Plaintiff then timely filed this lawsuit on April 28, 2023. She asserts claims for: (1) "subjecting [her] to embarrassing and dehumanizing conditions," "[a]ccusing [her] of being mentally impaired and delusional," wrongful death of Mr. Simmons, and attempted murder of herself; (2) loss of consortium; (3) sexual harassment against the DOC, as well as Connecticut Governor Ned Lamont and the City of New Haven, who are not named Defendants; (4) "illegal conduct"; (5) battery; and (6) human trafficking/false imprisonment. *Id.* at 23–27.

This is not the first action Plaintiff has brought against the DOC. Indeed, Plaintiff has brought three prior federal actions, each alleging some variations of the same themes advanced here. All of these cases have been dismissed. *See Hubert v. State of Conn. Dep't of Corr.*, No. 3:14-cv-476 (VAB), 2018 WL 1582508 (D. Conn. Mar. 30, 2018); *Hubert v. Dep't of Corr.*, No. 3:19-cv-1323 (VAB), 2020 WL 4938327 (D. Conn. Aug. 23, 2020); *Hubert v. Dep't of Corr.*, No. 3:21-cv-94 (VAB), 2023 WL 2072500 (D. Conn. Feb. 17, 2023). The United States Court of Appeals for the Second Circuit dismissed Plaintiff's appeal of the last of these rulings earlier this year. *See* Order, *Hubert v. Dep't of Corr.*, No. 23-315. Doc. 81 (appeal dismissed Mar. 1, 2024, as "lack[ing] an arguable basis either in law or in fact"). Plaintiff also brought one federal suit against a specific employee of the DOC, which was also dismissed, *Hubert v. Callender*, No. 3:17-cv-248 (VAB), 2019 WL 5964973 (D. Conn. Nov. 13, 2019), and a suit against the DOC in Connecticut Superior Court, which was likewise dismissed. *Hubert v. Dep't of Corr.*, HHD-CV23-5076135-S, Doc. Nos. 101, 102, 101.86.

## II. ELEVENTH AMENDMENT IMMUNITY

Defendant moves to dismiss the Complaint in its entirety for a number of reasons, including that most of Plaintiff's federal claims against it are barred by the immunity provided under the Eleventh Amendment, and therefore must be dismissed for lack of subject matter jurisdiction. The Court agrees with Defendant on this point, which leaves Plaintiff's Title VII claim as the only federal claim that survives an Eleventh Amendment immunity analysis.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 30 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)). *See also Allco Fin. Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order). The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "[j]udicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court, making Defendant's motion to dismiss for lack of subject matter jurisdiction proper. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (a case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it"). The plaintiff has the burden of proving, by a preponderance of the evidence, that subject matter jurisdiction exists. *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019).

The Eleventh Amendment generally bars private individuals from suing states—including arms of the state and state agents acting in their official capacities—unless one of a few specific exceptions to the rule of immunity applies. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985); *Tonina v. Conn. Dep't of Revenue Servs.*, 851 F. App'x 273, 274 (2d Cir. 2021) (summary order). The immunity recognized by the Eleventh Amendment "extends beyond states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Central School Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)). State agencies, including the DOC, qualify for the immunity. *Woods*, 466 F.3d at 236; *Garris v. Dep't of Corr.*, 170 F. Supp. 2d 182, 186 (D. Conn. 2001) ("The DOC is a state agency entitled to the protection of the Eleventh Amendment").

There are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress abrogates a state's Eleventh Amendment immunity; or (3) when the lawsuit seeks prospective injunctive relief against state officials—otherwise known as the *Ex parte Young* exception. *See CSX Trans., Inc. v. N.Y. St. Off. of Real Prop. Servs.*, 306 F.3d 87, 95, 98 (2d Cir. 2002); *see also Ex parte Young*, 209 U.S. 123 (1908).

Under a straightforward application of Eleventh Amendment immunity principles, Plaintiff's federal claims brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 against the DOC fail. The DOC is a state agency entitled to invoke the immunity, and there is no suggestion that the State has either waived its Eleventh Amendment immunity or, as Defendant notes, that Congress has abrogated it for claims brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986. *See* Def's. Br., ECF No. 21-1 at 7–8 (collecting cases holding that the Eleventh Amendment bars claims against the state and state agencies brought under these statutes). Nor, obviously, is the DOC a

state employee sued in an official capacity, such that the *Ex parte Young* exception could apply.[1] Separately, Section 1988 does not provide an independent cause of action. *Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 120 (2d Cir. 2005) (summary order).

Plaintiff's claims brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 are therefore dismissed without prejudice (but without leave to amend, for the reasons discussed below). *See Van De Bovenkamp v. Neb. Dep't of Roads*, No. 11 Civ. 6881 (ALC) (DLF), 2012 WL 13389071, at *1 (S.D.N.Y. Mar. 16, 2012) (noting that dismissals for lack of subject matter jurisdiction should be without prejudice). Plaintiff's claim under 42 U.S.C. § 1988 is dismissed with prejudice.

### III. TITLE VII RETALIATION

Congress has abrogated states' Eleventh Amendment immunity for claims brought under Title VII. *See Green v. Niagara Frontier Trans. Auth.*, 340 F. Supp. 3d 270, 273 (W.D.N.Y. 2018) (collecting cases). The Court interprets Plaintiff's complaint as attempting to state a claim for retaliation under Title VII. The Court therefore proceeds to considering whether Plaintiff has plausibly stated such a claim, and concludes that she has not.

Title VII makes it unlawful for an employer to discriminate against an employee because the employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To state a claim for retaliation under Title VII, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). To establish an adverse action for purposes of a Title VII retaliation claim, "a

---

[1] While Plaintiff references a number of individual employees of the DOC in her allegations, she has not named any of them as Defendants, in an official capacity or otherwise. As Plaintiff's allegations are quite plainly fanciful, the Court does not analyze whether Plaintiff has stated a cause of action against any particular individual discussed in the complaint.

6

plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted). An employer's adverse actions need not be employment-related to state a claim for retaliation. *Id.* at 63–64 ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace. . . . A provision limited to employment-related actions would not deter the many forms that effective retaliation can take.") (emphasis in original).

### A. Time Bar for Filing with the EEOC

In order to pursue a Title VII claim, the complainant must file a charge of unlawful employment discrimination with the EEOC within 180 days of the alleged unlawful practice. 42 U.S.C. § 2000e-5(e)(1).[2] This timeframe operates as a statute of limitations; the failure to file an administrative complaint by the deadline bars a plaintiff's action. *Jiles v. Rochester Genessee Reg. Transp. Auth.*, 217 F. Supp. 3d 688, 690–91 (W.D.N.Y. 2016). Although a time bar is usually treated as an affirmative defense, a defendant may raise it in a motion to dismiss under Rule 12(b)(6) if the defense is apparent from the face of the complaint. *Staehr v. Hartford Fin Servs.*

---

[2] If a claim is submitted to a state agency prior to the EEOC, the deadline to submit the claim to the EEOC is extended to 300 days from the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1*); see also Ford v. Bernard Fineson Dev. Ctr.*, 81 F.3d 304, 307 n.6 (2d Cir. 1996). While Plaintiff states that she "timely filed [c]harges" with the Connecticut Human Rights and Opportunity Commission ("CHRO"), ECF No. 1 at 9, she has provided no further information or documentation in support of this mere assertion. In fact, Plaintiff contradicts this assertion elsewhere in her complaint, such as where she marked that she filed charges with the EEOC, but did not mark the box that would indicate filing charges with the CHRO. *Id.* at 4. If a plaintiff's "own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Lenart v. Coach, Inc.*, 131 F. Supp. 3d 61, 67 (S.D.N.Y. 2015) (citing *Nationwide Mut. Ins. Co. v. Morning Sun Bus Co.*, No. 10-CV-1777 (ADS) (AKT), 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011)). The Court, therefore, does not credit Ms. Hubert's statement of filing a timely charge with the CHRO and applies only the 180-day requirement provided by Title VII.

*Group*, 547 F.3d 406, 425 (2d Cir. 2008); *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989).

Plaintiff's EEOC Charge, which was filed on December 11, 2022, provides March 23, 2022—the date of her stepfather's death—as the date of the most recent discriminatory action. ECF No. 1 at 55.[3]  Additionally, Plaintiff's EEOC Charge describes other incidents of being followed, harassed, and assaulted.  She states she reported to police on February 25 and 28, 2022, that she was being "gang stalked" by the DOC, which had aimed "[o]ver 14 million drone strikes to [her] head" and 24-hour recording of her, including her dreams. *Id.* at 56.  She does not provide dates for any other alleged incidents of harassment.  As the date of the last alleged unlawful practice was March 23, 2022, Plaintiff's 180-day clock began that day, making her EEOC filing deadline September 19, 2022. As noted above, Plaintiff did not file her EEOC charge until December 11, 2022.  Accordingly, Plaintiff's claims arising from March 23, 2022, and earlier were not timely filed, and likely could be dismissed on those grounds.

However, Plaintiff's allegations include that DOC retaliated against her for one of her previous federal lawsuits "in June 2022." *See id.* at 15 ¶ 12 ("[I]t's the plaintiff belief to revenge the plaintiff for filing a sexual harassment lawsuit . . . ."), 56 ("It's my belief that after the filing of a [f]ederal [l]awsuit in June 2022 the illegal retaliation is out of control . . . .").  Although no date is provided, if the retaliation began on June 14, 2022, or later Plaintiff's EEOC claim may have been timely.  Further, a plaintiff does not need to file a new charge with the EEOC and may still bring subsequent lawsuits if a retaliation claim is "reasonably related to those [claims] that were filed with the agency," as often arises when a plaintiff alleges retaliation for the filing of the EEOC charge itself.  *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686–87 (2d Cir.

---

[3] The Court can consider the EEOC charge when deciding the motion to dismiss, as it is incorporated by reference into Plaintiff's complaint.  *See* ECF No. 1 at 4; *Chambers v. Time Warner*, 282 F.3d 147, 152 (2d Cir. 2002).

2001). This limited exception to the exhaustion requirement applies when a retaliation claim "aris[es] during or after an EEOC investigation . . . [and] a plaintiff seeks to join [it] to a timely filed lawsuit on [her] original, exhausted claims," in order to promote efficiency. *See Duplan v. City of New York*, 888 F.3d 612, 624 (2d Cir. 2018). Here, where it is not clear that Plaintiff's claims were properly exhausted, and the retaliation issues appear to have arisen *before* the only EEOC complaint presented to the court, this limited exception would not appear to apply. Nonetheless, charitably reading Plaintiff's *pro se* complaint,[4] and given that the retaliation claim may have been timely presented to the EEOC, the Court declines to dismiss Plaintiff's Title VII retaliation claim as time-barred.

### B. Failure to State a Claim

Nonetheless, Plaintiff fails to state a Title VII retaliation claim.

A court may dismiss a claim as "'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic,' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)). *See also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (holding district courts may "dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee"). While retaliation actions need not be directly related to employment, even Plaintiff's most well-pleaded claims are plainly frivolous: she claims, among other things, that DOC has monitored her with drones that "bust[] her in the head, chest and vagina causing physical pain," ECF No. 1 at 15 ¶ 12, that DOC officers made a clone of her, *id.* at 18 ¶ 22, that a group within DOC has access to her brain, *id.* at 20 ¶ 36, and that DOC killed her pet birds, *id.* at 25, 35–

---

[4] The Supreme Court has repeatedly instructed that "a document filed *pro se* is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (internal quotation marks omitted); *Estelle v. Gamble*, 429 U.S. 106 (1976).

37 (depicting photos of birds).  These allegations are clearly baseless and fantastic.  Thus, Defendant's motion to dismiss Plaintiff's Title VII retaliation claim is dismissed.

In light of this conclusion, the Court need not reach Defendant's other arguments for dismissal, including that any retaliation claim would be barred by claim preclusion principles.

### C.  Leave to Amend

While a *pro se* plaintiff should ordinarily be given leave to amend, leave can be denied if the claims suffer from a substantive deficiency that will not be cured by amendment.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (recognizing that although *pro se* litigants should ordinarily be given leave to replead, leave can be denied if "the problem with [the plaintiff's] causes of action is substantive" and "better pleading will not cure it").  Here, most of Plaintiff's claims are not cognizable because they are barred by the Eleventh Amendment.  Her remaining Title VII claim is based on fanciful and delusional allegations, from which the Court can discern no spark of a legitimate retaliation claim.  Moreover, this is Plaintiff's fourth federal action against the DOC, with the previous three having been dismissed.  For these reasons, the Court dismisses the complaint without leave to amend.

Further, having dismissed the federal law causes of action, the Court declines to exercise supplemental jurisdiction over any state law claims.  *See* 28 U.S.C. § 1367(c)(3).  Retaining jurisdiction over Plaintiff's state law claims would not promote the values of economy, convenience, fairness, or comity, given that Plaintiff's allegations are plainly frivolous.  *See Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018).

## IV. CONCLUSION

For the reasons described herein, Defendant's motion to dismiss is GRANTED. The Complaint is dismissed in its entirety, without leave to amend. The Clerk is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Hartford, Connecticut, this 17th day of July, 2024.

       /s/ Sarala V. Nagala
       SARALA V. NAGALA
       UNITED STATES DISTRICT JUDGE